IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:11-CV-00207-FL

| | | |
|---|---|---|
| MARGARET RASCOE WORTHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on plaintiff's amended motion for judgment on the pleadings (DE # 47) and defendant's motion for judgment on the pleadings (DE # 50). In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court grants plaintiff's amended motion for judgment on the pleadings and denies defendant's motion for judgment on the pleadings. This matter is remanded to the Commissioner for proceedings consistent with this order.

## STATEMENT OF THE CASE

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on January 23, 2008,[1] alleging disability beginning April 29, 2004, which date plaintiff subsequently amended to January 1, 2008. Plaintiff's claim was denied initially and upon reconsideration. A hearing was held before an administrative law judge ("ALJ") who determined plaintiff was not disabled during the relevant period in a decision dated July 30, 2010. The Appeals Council denied

---

[1] The parties listed the application date as January 22, 2008, but the application reflects that it was made on January 23, 2008. (Tr. 141).

plaintiff's request for review on August 9, 2011, and the ALJ's decision became the final decision of the Commissioner. Plaintiff filed the instant action on September 29, 2011.

## DISCUSSION

A.  Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). This standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

B.  Analysis

The ALJ's determination of eligibility for Social Security benefits involves a five-step sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a medical impairment (or combination of impairments) that are severe; (3) the claimant's medical impairment meets or exceeds the severity of one of the impairments listed in [the regulations]; (4) the claimant can perform her past relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the claimant during the first four steps of the inquiry, but shifts to the Commissioner at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

2

In this case, the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since January 1, 2008. At step two, the ALJ determined that plaintiff suffered from the severe impairment of degenerative disc disease of the cervical and lumbar spine. At step three, the ALJ found that plaintiff's impairment did not meet or medically equal a listed impairment. Next, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a range of light work with limitations, and, at step four, the ALJ concluded that plaintiff was capable of performing her past relevant work as an assistant professor of art and as a lecturer.

Plaintiff contends that the ALJ's decision should be reversed because: (1) the ALJ failed to give proper weight to the opinions of plaintiff's treating physicians; and (2) the ALJ erred in evaluating plaintiff's credibility.

1. Opinion Evidence

Plaintiff first contends that the ALJ improperly rejected opinions of her treating physicians that she was unable to work. Specifically, plaintiff suggests that the opinions of her treating physicians, Dr. Hey and Dr. Lewis, and the opinion of the consultative examining physician, Dr. Morris, should have been given controlling weight. Plaintiff also contends that the ALJ erred in failing to consider a favorable disability determination by the State of North Carolina.

The Fourth Circuit has held that a treating physician's opinion in entitled to controlling weight *only* if it is supported by clinical and laboratory diagnostic techniques, *and* if it is not inconsistent with other evidence. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is

3

inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590). When the ALJ does not give the opinion of a treating physician controlling weight, the ALJ must weight the opinion pursuant to the following non-exhaustive list: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship between the physician and the claimant; (3) the supportability of the physician's opinion; (4) the consistency of the opinion with the record; and (5) whether the physician is a specialist. See 20 C.F.R. §§ 404.1527(d)(2)-(6); see also Johnson, 434 F.3d at 654. The ALJ's decision must contain "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ determined that the opinions of Dr. Hey and Dr. Lewis, who found that plaintiff was incapable of performing any work, were not entitled to controlling weight and afforded them diminished weight. (Tr. 17). The ALJ first noted that the opinions were elicited by plaintiff's attorney on fill-in-the-blank forms and were "devoid of any explanation, rationale, clinical findings, or reference to objective testing," which was not entirely accurate because, as the ALJ also acknowledged, Dr. Hey submitted along with his opinion an MRI that revealed a bulging disc at L3-4 that could cause pain commensurate with plaintiff's complaints. Id. However, the ALJ concluded that claimant's own reported activities, as reflected in Dr. Hey's treatment notes, along with Dr. Hey's findings on examination, undermined the doctors' opinions that plaintiff was incapable of performing any work. Id. Specifically, the ALJ found that the treatment notes

4

of Dr. Hey and Dr. Lewis documented plaintiff's complaints of "low-level pain with flares" (Tr. 704), that plaintiff had "a stable gait, 5/5 strength and no atrophy" (Tr. 704, 706), and that plaintiff reported being fully active, exercising, painting, and responding to physical therapy and Pilates (Tr. 704, 708-09). The ALJ acknowledged implicitly the length, frequency, nature, and extent of plaintiff's treatment relationship with Dr. Hey and Dr. Lewis by citing to specific exhibits in the record that detailed plaintiff's treatment history over the course of several years. (Tr. 16-17). Accordingly, the court finds that the ALJ did not err in giving the opinions of Dr. Hey and Dr. Lewis diminished weight, because their treatment notes did not fully support their conclusion that plaintiff was incapable of performing any work.

Plaintiff also takes exception with the ALJ's assessment of the opinion of Dr. Morris, who conducted a consultative examination of plaintiff on September 20, 2008. The ALJ gave Dr. Morris's opinion little weight because it was unsupported by the medical evidence in the record and Dr. Morris's own examination findings. (Tr. 17). Dr. Morris opined that the number of hours plaintiff could be expected to sit was four hours and to stand or walk was two hours in an eight-hour day due to her pain when seated; slow gait; difficulty with heel, toe, and tandem walking; decreased range of motion in the lower back and right hip; pain and tenderness in the low back; and her diagnosis of lumbar and cervical spondylosis. (Tr. 673-74). However, Dr. Hey noted on April 4, 2008 and March 27, 2009, both before and after Dr. Morris's examination, that plaintiff had a "stable non antalgic gate" (Tr. 704, 706), and Dr. Morris himself characterized plaintiff's difficulty with heel, toe, and tandem walking and difficulty with postural maneuvers as "slight." (Tr. 672). Additionally, the fact that plaintiff was diagnosed with lumbar and cervical spondylosis is not evidence in and of itself of a limitation. Finally, the ALJ did not

5

completely discount Dr. Morris's opinion in that she provided in the RFC that plaintiff "should have the freedom to change positions" in order to accommodate plaintiff's complaints of pain when seated. Accordingly, the court finds that the ALJ did not err in giving the opinion of Dr. Morris little weight, because it was inconsistent with other evidence in the record and, to some extent, with his own examination findings.

In addition to assessing the opinions of plaintiff's treating physicians and the examining consultant, the ALJ also considered the opinions of two non-examining consultants, Dr. Haywood and Dr. Virgili, and gave them significant weight as she found them to be "generally consistent with the other evidence of record." (Tr. 17). The ALJ was required to consider these opinions and did not err in affording them more weight than those of plaintiff's treating and examining physicians where they were supported by substantial evidence in the record. See Rollinson v. Astrue, No. 7:09-CV-137-FL, 2010 WL 1737690, at *7-8 (E.D.N.C. April 9, 2010), adopted by, 2010 WL 1737644 (E.D.N.C. April 29, 2010).

Finally, plaintiff asserts that the ALJ failed to discuss a favorable disability determination by the State of North Carolina and that the ALJ is required to consider such an opinion. This court has consistently ruled that findings by other governmental agencies, such as the North Carolina Department of Health and Human Services, "cannot be ignored and must be considered," and that the ALJ must "explain the consideration given to these decisions." SSR 06–03p, at *6–7 (Aug. 9, 2006). See, e.g., Alexander v. Astrue, No. 5:09-CV-432-FL, 2010 WL 4668312 (E.D.N.C. Nov. 5, 2010); Watson v. Astrue, No. 5:08–CV–553–FL, 2009 WL 2423967 (E.D.N.C, Aug. 6, 2009).

In the present case, plaintiff stated at the administrative hearing that she supported herself with "income from the North Carolina Disability, and some family investments." (Tr. 27). While it appears that plaintiff, who was represented by counsel of record at the administrative hearing, failed to submit any notice or decision of disability from the issuing agency, the fact that she was receiving state disability was noted in the record (Tr. 153, 185, 188), and after plaintiff testified that she was receiving state disability benefits, the ALJ should have further developed the record on this point to the extent necessary to evaluate this evidence as required by SSR 06-03p. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986) ("This circuit has held that the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate.") (citations omitted); Allen v. Astrue, 843 F. Supp. 2d 920, 935-36 (S.D. Ind. 2011) (finding ALJ's failure to discuss claimant's testimony that he had a VA disability rating of 20 percent was reversible error). Accordingly, remand is appropriate to allow the ALJ to consider the state disability decision.

In sum, the ALJ properly evaluated the opinions of Dr. Hey, Dr. Lewis, and Dr. Morris and her decision to award them diminished or little weight was supported by substantial evidence. However, the ALJ's failure to further develop the record as necessary to evaluate plaintiff's testimony that she was receiving state disability benefits was error requiring remand.

2. Credibility Assessment

Plaintiff next contends that the ALJ erred in assessing her credibility by improperly discrediting her subjective complaints of pain, and specifically its preclusive effect on her ability to return to her past relevant work. The court disagrees.

An ALJ employs a two-step process in evaluating the intensity, persistence, and limiting effects of symptoms on a claimant's ability to perform basic work. Craig, 76 F.3d at 594; SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996). "First, the ALJ must determine whether medically determinable mental or physical impairments can produce the symptoms alleged. Second, the ALJ must evaluate the claimant's testimony about his subjective experiences." Fisher v. Barnhart, 181 F. App'x 359, 363 (4th Cir. 2006) (unpublished) (citing Craig, 76 F.3d at 591-96). The ALJ must consider the entire record in making this determination, and may not discredit a claimant's testimony regarding the intensity and persistence of her symptoms solely because the objective medical evidence does not substantiate that testimony. See 20 C.F.R. § 404.1529(c); SSR 96-7p, 1996 WL 374186, at *4. "The reasons for the [ALJ's] credibility finding must be grounded in the evidence and articulated in the determination or decision." Id.

The ALJ summarized plaintiff's testimony with respect to her limitations as follows:

> At the hearing, the claimant testified that she drives about 20 miles a week. She has not worked since August 2007 when she taught a design class. She was an art professor from 1990 until 2004. In this job she taught painting, drawing and design. She tried to lift 10 pounds, but receives help with lifting. She is unable to work due to neck and back pain. As a lecturer, the claimant lifted 10-15 pounds. Dr. Hey advised her not to ride in a car or sit for more than 30 minutes. Her family owned a farm which she oversaw. She was unable to run the farm from 3 hours away, so the cattle were removed from the farm 3-4 years ago. She makes sure the rent gets paid. When she taught in 2007, she would alternate between sitting and standing. Her pain became so great that she had to dismiss her class early. When she is in pain at home, she sits in a recliner. She tries to minimize her neck pain by not looking up, bending over, or lifting. She still likes to paint, but cannot do so for more than 30 minutes. When she is in pain, she has difficulty concentrating. She has 3-4 "bad" days a week.

(Tr. 15-16).

With respect to plaintiff's past relevant work, she testified at the administrative hearing that she taught at the University of North Carolina, Wilmington ("UNCW") from 1990 to 2004,

first as a lecturer in art history and later as a tenure track assistant professor of studio art. (Tr. 29). During that time, she was absent for a total of three years (once for two years and once for one year) due to two separate back surgeries, and she stopped working altogether in 2004. Id. In 2007, plaintiff attempted to return to UNCW to teach one class that met for two hours twice a week, for a total of four hours per week, and for which she spent an additional four to six hours preparing for class. (Tr. 33). Plaintiff spent approximately 20-40 minutes of each class sitting, was provided with a rocking chair to accommodate her back pain, and could sit or stand as necessary. (Tr. 34). Plaintiff testified that she missed some classes and had to let the students leave early on other occasions due to pain in her neck and lower back. (Tr. 35-36). On the days that she did not teach, she was "not good" and she would lie down in her recliner to get relief. (Tr. 36).

At the first step of the credibility determination, the ALJ concluded that plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms. Specifically, the ALJ acknowledged various x-rays and MRIs that revealed degenerative disc disease from C5-7 with disc space narrowing and spondylosis, mild degenerative disc disease above L3-4, stenosis at C5-6, and multi-level disc bulges in the lumbar region with no recurrent stenosis or herniation. (Tr. 16). However, at the second step, the ALJ concluded that plaintiff's allegations regarding the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the ALJ's RFC assessment. In so concluding, the ALJ noted that plaintiff's conservative course of treatment of ibuprofen and physical therapy was inconsistent with a level of severity that would preclude

9

plaintiff from performing any work.[2] Id. The ALJ additionally observed that various treatment notes indicated that while plaintiff had limited flexion of the neck, her motor strength and sensation were intact, her gait was stable, her motor strength was 5/5, and she could ambulate independently. Finally, the ALJ found that the activities plaintiff described, including walking a mile a day, doing yoga and Pilates, cooking, washing dishes, painting, and taking care of her family business, were "not limited to the extent one would expect, given her complaints of disabling symptoms and limitations (Exhibits 4E, 5F, 9F)." Id.

The ALJ's analysis offers several specific reasons for discounting plaintiff's credibility, and it is not within this court's province to second guess the ALJ's well-supported determination. See Mickles v. Shalala, 29 F.3d 918, 929 (4th Cir. 1994). Additionally, "[g]reat weight should be given to the hearing examiner's findings where credibility of witnesses is involved." Laws, 368 F.2d at 644. First, the ALJ appropriately considered plaintiff's election to pursue a conservative course of treatment, particularly where plaintiff has failed to suggest a reasonable basis for declining more aggressive treatment for her allegedly debilitating pain. See Farrior v. Astrue, No. 7:10-CV-164-FL, 2011 WL 3157150, at *5 (E.D.N.C. July 26, 2011). Plaintiff stated that it was her desire not to take narcotics or other pain killers, but rather to simply limit her activities (Tr. 188), which is not entirely reasonable given the lack of evidence in the record regarding attempts to treat her chronic pain by means other than taking ibuprofen and physical therapy. Next, the court is not persuaded that the case of Hines v. Barnhart, relied on by plaintiff, dictates a different result where, as here, plaintiff's impairment is not one that "rarely

---

[2] The ALJ also stated that "[t]here is no documentation that additional surgery has been recommended." (Tr. 16). However, the court notes that Dr. Rodger's notes from January 8, 2009, regarding his discussion with plaintiff of her MRI results, indicated that "[t]reatment options were discussed including surgery for ACDF C5 and C7" and that "plaintiff would like to try something else and will start with volteran, consider epidural steroids if this does not work." (Tr. 699). It appears from the record that plaintiff did not in fact pursue the surgery option, which implies in the absence of other explanation that the more conservative treatment options were sufficiently effective.

10

produces the objective medical evidence" as was the case in Hines where the claimant suffered from sickle cell anemia. 453 F.3d 559, 561 (4th Cir. 2006). Thus, it was appropriate for the ALJ to consider and rely on objective medical evidence in assessing the credibility of plaintiff's subjective complaints of pain. Furthermore, plaintiff is incorrect in asserting that the ALJ never addressed the Pain Questionnaire completed by plaintiff, as the ALJ cited plaintiff's Pain Questionnaire by reference to Exhibit 4E (Tr. 187-89) in support of her conclusion that plaintiff's activities were not indicative of her complaints of disabling pain (Tr. 16).

Finally, the court notes that the ALJ did not completely reject plaintiff's testimony in concluding that the severity of her condition warranted a limitation to light work with restrictions, rather than work at a higher exertional level, and "accorded the claimant the benefit of the doubt in limiting the amount she can sit, stand, walk, lift, carry, balance, stoop, kneel, crouch crawl, climb, be exposed to dangerous machinery/heights, and turn her head, as well as by giving her a sit/stand option at will." (Tr. 18). Accordingly, the ALJ did not err in evaluating plaintiff's subjective description of her symptoms and limitations.

## CONCLUSION

Plaintiff's amended motion for judgment on the pleadings (DE # 47) is GRANTED, defendant's motion for judgment on the pleadings (DE # 50) is DENIED, and this matter is REMANDED to the Commissioner for proceedings consistent with this order. The clerk is directed to close the case.

SO ORDERED, this the 11th day of September, 2012.

LOUISE W. FLANAGAN
United States District Judge